**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| HUNTER BINGHAM | ) | |
| *Plaintiff*, | ) | |
| | ) | |
| v. | ) | DOCKET NO. 3:25-cv-165 |
| | ) | |
| CO KALINA | ) | |
| *Defendant*. | ) | JURY TRIAL DEMANDED |

## COMPLAINT

Plaintiff Hunter Bingham, by his attorneys at the Mizner Law Firm, files this Complaint and states as follows:

### A.  Parties.

1.      Plaintiff Hunter Bingham is an adult individual who is currently incarcerated at the State Correctional Institution at Somerset ("SCI Somerset"), located at 1590 Walters Mill Road, Somerset, Pennsylvania 15510.

2.      Defendant Corrections Officer Kalina is an employee of the Pennsylvania Department of Corrections as a corrections officer at SCI Somerset, located at 1590 Walters Mill Road, Somerset, Pennsylvania 15510. Defendant Kalina is sued in his individual capacity, and was at all times acting under color of state law.

### B.  Jurisdiction and Venue

3.      This action is being brought under the Civil Rights Act, 42 U.S.C. § 1983 which provides a cause of action for the "deprivation of any rights, privileges, or immunities secured by the Constitution and the laws" of the United States.

4.      This Honorable Court has jurisdiction over these federal claims pursuant to 28 U.S.C. §§ 1331 & 1343.

5.      Venue is proper in the Western District of Pennsylvania pursuant to 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to this claim occurred within the territorial jurisdiction of this District and the Defendants are subject to personal jurisdiction within this District.

**C.  Facts**

6.      On July 26, 2023, Mr. Bingham was incarcerated at SCI Somerset.

7.      On that date, Mr. Bingham noticed that several of his art supplies were missing after officers searched his cell.

8.      Mr. Bingham exited the cell area and requested permission to discuss his missing art supplies with Officer Burfield from the search team, and was granted permission.

9.      While Mr. Bingham was talking to corrections officers near the CA Unit desk, Defendant Kalina charged at Mr. Bingham, and violently took Mr. Bingham to the ground, causing Mr. Bingham to fall and injure his neck and lower back.

10.     After Defendant Kalina violently knocked Mr. Bingham to the ground, in front of about four staff persons, Mr. Bingham got himself up from the ground and placed his hands in the air to show that he was compliant and not a threat.

11.     However, he was not detained thereafter; in fact, neither Defendant Kalina nor anyone else spoke to him after he got up from the ground.

12.     One of the other officers walked away from the scene, and no officers detained Mr. Bingham, so Mr. Bingham eventually walked back to his cell, completely confused as to why he had been knocked to the ground and fearful of what was going to happen next.

13.    At no point either before or after he was knocked to the ground, did any of the officers give Mr. Bingham any orders, nor advise him that he was breaking a rule, nor direct him that he needed to comply with any rule or order.

14.    At no point either before or after he was knocked to the ground, did either Defendant Kalina nor anyone else explain why Defendant Kalina had violently taken Mr. Bingham to the ground; to this day, he has never received an explanation for why it happened from anyone.

15.    Defendant Kalina did not have any penological or legitimate purpose in violently knocking Mr. Bingham to the ground while Mr. Bingham was discussing his missing art supplies at the CA Unit desk, evidenced by the fact that Mr. Bingham did not receive a misconduct for this incident, nor was he detained by any of the officers after Defendant Kalina tackled Mr. Bingham.

16.    Defendant Kalina's conduct was purely violence, for violence's sake.

17.    On August 3, 2023, several days after the assault, Mr. Bingham reported to the medical department for his pain. RN Anthony Fama noted on Mr. Bingham's medical record:

> Inmate was brought to medical for evaluation from an incident that happened several days ago.  He states he was standing near the officers desk talking with an officer and another officer came through the door moving very quickly and knocked his legs out from under him and he fell to the floor… Today he complains of cervical neck pain.  Pain is stated to be 7/10 on the pain scale and tender to palpation.  Described inability to fully tilt his head forward as if to touch his chest with his chin.

18.    On August 8, 2023, the medical department assessed Mr. Bingham with cervical lordosis, and planned physical therapy as his treatment.

19.    Mr. Bingham returned to the medical department for his neck pain and limited motion in his neck on August 10, 2023, and again five days later.

20.     On September 12, 2023, Mr. Bingham had physical therapy for the pain in his neck and middle back. The physical therapist assessed Mr. Bingham with "neck and middle back pain from trauma."

21.     He returned to physical therapy on September 19, 2023, to the medical department on September 25, 2023, and physical therapy again on September 28, 2023 for the same injury.

22.     On September 28, 2023, Mr. Bingham's physical therapist assessed him with "[n]eck pain/spasms in upper back (whiplash injury status post fall)."

23.     Mr. Bingham returned to the medical department on October 4, 2023 for his pain and had other physical therapy appointments on October 10, 2023 and October 25, 2023.

24.     Mr. Bingham's October 25, 2023 physical therapy note states that Mr. Bingham "expresse[d] anxiety about being around 'COs and decreased sleep time' regarding his initial trauma/incident of assault." Mr. Bingham discontinued physical therapy on October 31, 2023.

25.     Mr. Bingham continued to report to the medical department for his chronic neck and back pain caused by Defendant Kalina's abuse, including four appointments in 2024 and eight more appointments in 2025.

26.     On March 26, 2025, Mr. Bingham's trileptal prescription was increased from 900 mg twice daily to 1200 mg twice daily to better manage his pain.

27.     Over a year after Defendant Kalina's assault on Mr. Bingham, Mr. Bingham continues to suffer from pain in his spine, a sharp pain shooting in his left leg, numbness in his left thigh whenever he is standing, and continues to receive medical treatment and medication for his pain.

28.     In response to Defendant Kalina's assault, Mr. Bingham filed an initial grievance on July 29, 2023.

29.     On August 4, 2023, Mr. Bingham received a response, stating that an extension is necessary to appropriately investigate Mr. Bingham's allegations of abuse.

30.     On September 27, 2023, Mr. Bingham received an initial review response to his grievance, which stated:

> In your grievance, you allege that you approached the desk area on CA Unit after your cell was searched. You then state that Officer Kalina ran full speed at you and began to trip, and as he was falling Officer Kalina kicked your legs out from under you… **I conducted a thorough investigation** in accordance with DC-ADM 001 **and uncovered evidence to support your claim**. Therefore, I found **this allegation of abuse to be substantiated**. The Bureau of Investigations and Intelligence has reviewed the investigation conducted by SCI Somerset's Security Office and concurs with the finding.

31.     The September 27, 2023 grievance response upheld Mr. Bingham's allegation of abuse, but denied his request for relief.

32.     The Bureau of Investigations and Intelligence ("BII") has an exacting standard that must be met before it substantiates an inmate's allegation of abuse, requiring definitive evidence which proves, beyond doubt, that the inmate's allegation is true.

33.      Essentially, before substantiating an inmate's allegation of abuse, BII must have objective, uncontradictable evidence which clearly documents that the alleged abuse occurred, such as video evidence, an admission, or uncontradicted witness statements.

34.     Because BII substantiated Mr. Bingham's allegation of abuse, there is definitive and uncontradictable evidence proving that Mr. Bingham's allegations against Defendant Kalina are true.

35.     After Mr. Bingham filed his grievance and received the response substantiating his allegation of abuse, but denying his requested relief, Lieutenant Dabbs told Mr. Bingham that his grievance would be sent to the central office for review, so he did not need to appeal.

36.      Because Lieutenant Dabbs was the investigating officer for Mr. Bingham's grievance, Mr. Bingham reasonably trusted Lieutenant Dabbs' statement.

37.     However, the information which Lieutenant Dabbs provided to Mr. Bingham was not accurate; in fact, Mr. Bingham was required by the Department of Corrections policies to promptly appeal the initial review response.

38.     By the time Mr. Bingham realized that Lieutenant Dabbs had provided him factually incorrect information about how to proceed with the grievance process, it was too late to file his appeal and continue seeking monetary compensation for his injuries.

39.     Nonetheless, because Lieutenant Dabbs misled Mr. Bingham as to the rules of the grievance process, causing him to fail that process, the grievance process was unavailable to Mr. Bingham. *Ross v. Blake*, 578 U.S. 632, 644 n.3 (2016), *see also Hardy v. Shaikh,* 959 F.3d 578, 587 (3d Cir. 2020) ("Misleading or deceptive instructions from a prison official can also render a grievance process unavailable.").

40.     As such, the administrative remedies process required under the Prison Litigation Reform Act is deemed exhausted, and Mr. Bingham's claim is ripe for this Honorable Court's review.

### D.  Legal Standards

41.     The Eighth Amendment protects prisoners from the infliction of cruel and unusual punishment. U.S. Const. Amend. VIII.

42.    To prevail on any Eighth Amendment claim, an inmate must show: (1) a deprivation that is objectively sufficiently serious; and (2) "a sufficiently culpable state of mind" of the defendant official. *See Farmer v. Brennan*, 511 U.S. 825, 834 (1994).

43.    Beyond this general standard, there are different types of Eighth Amendment claims, and different criteria apply depending on the type of violation alleged. *See Hudson v. McMillian*, 503 U.S. 1, 8 (1992).

44.    There are several factors that a court examines in determining whether a correctional officer has used excessive force in violation of the Eighth Amendment, including: (1) the need for the application of force; (2) the relationship between the need and the amount of force that was used; (3) the extent of injury inflicted; (4) the extent of the threat to the safety of staff and inmates, as reasonably perceived by responsible officials on the basis of the facts known to them; and (5) any efforts made to temper the severity of a forceful response. *McCullon v. Saylor*, 2013 U.S. Dist. LEXIS 42418, at *39-40 (M.D. Pa. Mar. 4, 2013).

45.    Importantly, *Farmer* has been interpreted to apply to assaults on inmates committed by guards. *See, e.g., Farmer*, 511 U.S. at 834 (quoting *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981) ("Being violently assaulted in prison is simply not 'part of the penalty that criminal offenders pay for their offenses against society.'")); *Miskovitch v. Lt. Hostoffer*, 2010 U.S. Dist. LEXIS 57670, at *4 (May 19, 2010) (citing *Farmer*, 511 U.S. at 833 ("[T]he Eighth Amendment requires prison officials to take reasonable measures to protect prisoners from violence at the hands of other prisoners, as well as at the hands of guards or other state actors.").

## COUNT I

### EXCESSIVE FORCE IN VIOLATION OF THE EIGHT AMENDMENT

*Hunter Bingham*
*v.*
*CO Kalina*

46.     The foregoing averments are hereby incorporated by reference, as if set forth fully

herein.

47.     Defendant Kalina's use of force against Mr. Bingham was without any

penological justification, and was exercised maliciously.

48.     The assault on Mr. Bingham was not done for any legitimate penological or other

legitimate purpose, as Mr. Bingham was talking to officers near the CA Unit desk, after receiving

prior permission, to complain about his missing personal property, and did not pose a safety or

security threat to himself or others.

49.     Defendant Kalina's use of force was malicious, because it was purely gratuitous

violence against Mr. Bingham which served no penological purpose.

50.     As such, Defendant Kalina's assault on Mr. Bingham constituted excessive use of

force in violation of the Eighth Amendment.

51.     As a direct and proximate result of Defendant Kalina's use of excessive force

against Mr. Bingham, he has suffered:

      a.   chronic neck pain;

      b.   chronic back pain;

      c.   a sharp pain shooting in his left leg;

      d.   numbness in his left thigh whenever he is standing;

      e.   disrupted sleep;

     f.   fear, anxiety, humiliation, mental anguish, and other emotional and mental harm.

WHEREFORE, Plaintiff Hunter Bingham respectfully requests that this Honorable Court enter judgment in his favor and against Defendant Kalina in an amount in excess of $75,000, along with punitive damages, attorneys dees, and all other relief permitted by law.

Respectfully submitted,

MIZNER LAW FIRM

By: /s/ John F. Mizner, Esq.

John F. Mizner
PA Bar No. 53323
jfm@miznerfirm.com

Joseph P. Caulfield
PA Supreme Court ID 322823
jpc@miznerfirm.com

Joel D. Shambaugh
PA Supreme Court ID 336751
jds@miznerfirm.com

311 West Sixth Street
Erie, Pennsylvania 16507
(814) 454-3889

*Attorney for the Plaintiff*

**JURY TRIAL DEMANDED**